PHENIX INS. CO. v. J. C. GRIMES.

[FILED NOVEMBER 5, 1891.]

1. **Insurance**: SEVERABLE CONTRACT.    Where in a policy of in-
surance a separate valuation has been put upon the different
subjects of insurance, as $300 on the dwelling house, $175 on
household furniture, $75 on barn, $500 on horses, mules, and
colts while in barn or on farm," etc., the contract is severable
and not entire and indivisible.

2. ——: ——: CONSIDERATION: HOW STATED.    In such case
the consideration for insurance on the house might be stated in
the policy as a separate item, so of the consideration for the
household furniture, barn, horses, mules, and colts, and the
stating of the aggregate of these sums in the policy as the con-
sideration instead of the items separately does not make the
contract indivisible and entire.

ERROR to the district court for Johnson county.    Tried
below before BROADY, J.

S. P. Davidson, for plaintiff in error, cited, contending that
the contract was entire: Cuthbertson v. Ins. Co., 96 N. Car.,

480, 487; *Hinman v. Ins. Co.*, 36 Wis., 159, 169; *Schumitsch v. Ins. Co.*, 48 Id., 26, 30; *Plath v. F. Ins. Ass'n*, 23 Minn., 479; *Garver v. Ins. Co.*, 69 Ia., 202, 204; *Bowman v. Ins. Co.*, 40 Md., 620, 632; *Biggs v. Ins. Co.*, 88 N. Car., 141; *Russ v. Ins. Co.*, 29 Up. Can., Q. B., 73; *Havens v. Ins. Co.*, 111 Ind., 90, 96, 97; *Gottsman v. Ins. Co.*, 56 Pa. St., 210; *Agri. Ins. Co. v. Montague*, 38 Mich., 548, 551; *Barnes v. Ins. Co.*, 51 Me., 110; *Lovejoy v. Ins. Co.*, 45 Id., 472; *Hartshorne v. Ins. Co.*, 50 N. J. L., 427; *Hathaway v. Ins. Co.*, 64 Ia., 229; *Brunswick Sav. Inst. v. Ins. Co.*, 68 Me., 313; *Lee v. Ins. Co.*, 3 Gray [Mass.], 583; *Kimball v. Ins. Co.*, 8 Id., 34, 38; *Brown v. Ins. Co.*, 11 Cush. [Mass.], 280; *Moore v. Ins. Co.*, 28 Gratt. [Va.], 508.

*A. M. Appelget, contra*, cited: *Clark v. Ins. Co.*, 6 Cush. [Mass.], 342; *Howard v. Ins. Co.*, 3 Denio [N. Y.], 301; *Manley v. Ins. Co.*, 1 Lans. [N. Y.], 20; *Stetson v. Ins. Co.*, 4 Mass., 330; *Com. Ins. Co. v. Spankneble*, 52 Ill., 53; *West Branch Ins. Co. v. Helfenstein*, 40 Pa. St., 289; *Ætna Ins. Co. v. Tyler*, 16 Wend. [N. Y.], 385; *Ayres v. Ins. Co.*, 17 Ia., 176; *Scanlon v. Ins. Co.*, 4 Biss. [U. S.], 511; *State Ins. Co. v. Schreck*, 27 Neb., 527.

MAXWELL, J.

This is an action upon a policy of insurance to recover for the death of a colt. On the trial of the cause a jury was waived and the cause tried to the court, which found in favor of the defendant in error and rendered judgment for the value of the animal. The cause was submitted to the court upon the following stipulation of facts: " It is agreed by and between the parties plaintiff and defendant, that this policy was issued by the defendant to the plaintiff; that on or about the 16th of July, 1888, the loss occurred, a colt belonging to the plaintiff was killed by lightning on the land described in the policy, which land had been

sold and conveyed by the plaintiff to a third party some time in March, 1888, but that the plaintiff was still in possession thereof; that he was the owner of the land at the time the policy was issued; that the colt was of the value of $60 at the time it was killed; that on the 20th of July, 1888, the plaintiff gave notice to S. F. Holmes, the agent of the insurance company; that on the 28th of July, 1888, the plaintiff made proofs of loss, now offered in evidence and marked 'Plaintiff's Exhibit B'; that no part of the personal property was incumbered, nor had the title thereof been transferred in any way; that the amount of loss or any part of it has not been paid, nor has the premium or any portion thereof been repaid or tendered to plaintiff.

"The buildings described in the policy are situated upon said land which had been conveyed by plaintiff in March, 1888; that a receipt of the proofs of loss in July, 1888, was the first notice defendant had of said conveyance of the said property; that the paper now offered in evidence marked 'Defendant's Exhibit A,' is the original application in pursuance of which the policy sued on was issued.

"It is further agreed that at the time of the loss plaintiff was the owner of five horses, mules, and colts."

The policy of insurance is as follows:

"No. 0221426.                                    $1,300.

"By the policy of insurance the Phœnix Insurance Co., of Brooklyn, N. Y., in consideration of cancellation of policy No. 065622 and $\frac{65}{100}$ dollars cash and the payment at maturity of eleven dollars, for which the insured hereafter named has executed a certain promissory note or obligation of even date herewith, and payable of the 1st day of January, 1887, do insure J. C. Grimes against loss or damage by fire or lightning to the amount of thirteen hundred dollars, as follows:

"$300 on one story, shingle roof, frame building while occupied by assured, as dwelling No. 1 (including foundation, cellar, or basement walls).

"$175 on household furniture, useful and ornamental, family wearing apparel, printed books, plate and plated ware, paintings and engravings and their frames (in case of loss no one to be valued at more than cost), sewing machines, trunks, canes, umbrellas, family supplies and fuel, while contained in dwelling No. 1.

"$75 on shingle roof frame barn No. 1 (including foundation).

"$50 on shingle roof frame granary.

"$200 on grain in granaries, or in barns, or in cribs, or in dwelling, or in stacks on cultivated land, not over $75 on any one stock.

#### "CLASSIFICATION OF ANIMALS.

"$300 on horses, mules, and colts (class 1), while in barn or on farm, and against lightning while on or off premises.

"$200 on cattle (class 2), while in barn or on farm, and against lightning while on or off premises.

"It is hereby expressly provided and mutually agreed, and it is made one of the considerations upon which this contract is based, that in case of loss or damage to any animal the limit of claim upon this company shall be the amount produced by dividing the total amount insured upon the class to which the animal belongs (as above classified), by three-fourths of the total number of animals of such class owned by the assured at the time of the loss or damage, it being understood, however, that in no case (except in the case of more valuable animals insured specially hereunder by names or numbers) shall this company be liable for more than $100 on any one horse, mule, or colt, $50 on any one head of cattle, $5 on any one sheep, or $10 on any one hog, nor in any case for more than the actual cash value of the animal destroyed or damaged.

"Situated (except as otherwise provided) on, and confined to, premises now actually owned and occupied by the assured, to-wit, 80 acres, section N. E. ¼ 35, township 4, range 11, Johnson county, Nebraska.

"And the Phœnix Insurance Company hereby agrees to make good unto the assured, his executors, administrators, or assigns, on receipt of proof, satisfactory to the company, at its Chicago office, all such immediate loss or damage (at the time of loss) not exceeding in amount the sum or sums insured as above specified, nor the interest of the assured in the above described property, as shall happen by fire or lightning to the property so specified from the 26th day of April, 1886, at 12 o'clock at noon, to the 26th day of April, 1889, at 12 o'clock at noon.

"But it is expressly agreed that this company shall not be liable for any loss or damage that may occur to the property herein mentioned while any promissory note or obligation, given for the premium, remains past due and unpaid.

"This insurance is based upon the representations contained in the assured's application of even number herewith on file in the company's office in Chicago, Illinois, each and every statement of which is hereby specifically made a warranty and a part hereof; and it is agreed that if any false statements are made in said application, this policy shall be void; or if the assured shall have, or hereafter accept, any other insurance on the above mentioned property, whether valid or not, or if the above mentioned buildings be or become vacant or unoccupied, or be used for any other purpose than is mentioned in said application, without consent indorsed hereon, or if the property shall hereafter become mortgaged or incumbered, or upon the commencement of foreclosure proceedings, or in case any change shall take place in the title, possession, or interest of the assured in the above mentioned property, or if the assured shall not be the sole and unconditional owner in fee of said property, or if this policy shall be assigned, or if the risk be increased in any manner except by the erection and use of ordinary out-buildings, without consent indorsed hereon, then, in each and every one of the above cases, this policy shall be null and void.

" The use of gasoline or other light products of petroleum for lighting, heating, or cooking is prohibited, and will render this policy void without consent indorsed hereon.   Kerosene oil may be used for lights.

" In case the assured fails to pay the premium note, or order, at the time specified, then this policy shall cease to be in force, and remain null and void during the time said note or order remains unpaid after its maturity, and no legal action on the part of this company to enforce payment shall be construed as reviving the policy.   The payment of the premium, however, revives the policy, and makes it good for the balance of its term.

" No agent or employe of this company, or any other person or persons, have power or authority to waive or alter any of the terms or conditions of this policy, except only the general agent at Chicago, Illinois, and any waiver or alteration by him must be in writing.

" In case there shall be any other insurance upon the property hereby insured, whether valid or not, the assured shall recover of this company only such proportion of the loss as the sum hereby insured thereon shall bear to the whole amount of insurance.

" The company reserves the right to cancel this policy, or any part thereof, by tendering to the assured the unearned premium, less any policy and survey fee that may be included in the consideration; and the assured may cancel where the premium or note, or obligation given for such premium, has been actually paid in cash, in which case the company shall retain the expense of obtaining and writing the risk, and the customary short rates from the date of the policy up to the time it is received at the Chicago office of the company for such cancellation.

[On the margin: ] " Mortgage of $500 permitted.

" In case of loss or damage, the assured shall forthwith give notice of said loss, in writing, to the company.   The assured shall, if required, submit to an examination, or

examinations, under oath, by any person appointed by the company, and subscribe to such examination when reduced to writing. Any difference arising under this policy in case of loss may be settled by arbitration, each party to select one arbitrator, and the two chosen, in case of disagreement, to select a third, and their award in writing shall be binding as to the amount of loss only, the cost of arbitration to be borne by the parties hereto equally. If this policy is made payable in case of loss to a third party, or held as collateral security, the proofs of loss shall be made by the party originally insured, unless there has been an actual sale of the property covered, consented to as required by the conditions of this policy.

"No suit or action against this company shall be sustainable in any court of law or chancery unless commenced within six months next after such loss shall occur, any statute of limitation to the contrary notwithstanding.

"In witness whereof, the Phœnix Insurance Company have caused these presents to be signed by their president and attested by their secretary in the city of Brooklyn, county of Kings, N. Y., but the same shall not be binding until countersigned by T. R. Burch, general agent for the company, at Chicago, Illinois.

"Stephen Crowell,

"Philander Shaw,                    <em>President.</em>
          "<em>Secretary.</em>

"Countersigned at Chicago, Ill., this 26th day of April, 1886.                    ———— ————,

"<em>General Agent.</em>"

The principal error relied upon by the insurance company for a reversal of the judgment is the sale and conveyance of the real estate on which the insured property was kept, there being no notice given to the company of such transfer.

It is claimed that the contract of insurance, although it covers several distinct items of property specified in the

policy, yet the consideration being single and entire, therefore a violation of any part of the policy renders the whole void.

There are many cases holding that where the premium for the insurance is a gross sum, and the policy covers different classes of property, the contract is indivisible, and if void as to one class, is void as to all. Hence, as the defendant in error had insured the buildings on the farm, and afterwards sold the farm without consulting or notifying the insurance company, that therefore the policy was avoided as to the personal property covered by the policy. The objection to this class of decisions is that they are based on a false assumption of facts. Thus, a certain amount of insurance is placed on the dwelling house, a specified amount on the barn, and on several descriptions of personal property. In case of loss of the farm buildings or any item of personal property, the recovery cannot exceed the amount of insurance stated in the policy on that particular class or description of property, although the aggregate of values of the different items of insurance might greatly exceed that sum. Thus, suppose a policy is made for $5,000, of which sum $1,000 was placed on the dwelling house, $500 on the barn, and the remainder on certain items of personal property named. In case of the destruction of the house by fire, the company would be liable for $1,000 and no more; and if the barn was burned, the liablity could not exceed $500. So in case of the destruction by fire of any other piece of property insured, the company is liable only for the amount of insurance on that and not for the full amount named in the policy, unless all the property insured is destroyed.

It will thus be seen that the contract consists of separate and distinct parts and covers many subjects. The consideration for these several items might properly be stated separately in the policy, but for convenience the aggregate of the several sums alone is given. This does not make an

entire and indivisible contract of the policy. The contracts are severable as to each class, and one piece of property is not dependent on another. This question was before this. court in 1889, in *State Ins. Co. v. Schreck*, 27 Neb., 527. That cause was carefully considered, and it was held, in effect, that the contract was severable, and that the execution of a mortgage upon the realty would not prevent a recovery for loss of the personal ·property. The provision in the policy in that case was substantially the same as in the one. under consideration. We are entirely satisfied with the carefully prepared opinion of Chief Justice REESE in that case, and it will be adhered to. (See also *German Ins. Co. v. Fairbank*, 32 Neb., 750.) This disposes of the errors relied upon, and the judgment is

AFFIRMED.

THE other judges concur.