| 94 | 355 |
| 102 | 437 |

## Richmond.

SULPHUR MINES CO. v. PHENIX INSURANCE CO.

March 18, 1897.

1. FIRE INSURANCE—*Policy—Conditions against encumbrances.*—If a fire in-
surance policy contains a provision that the policy shall be void if the
property be or become encumbered unless consent thereto be endorsed
on the policy by an authorized agent of the insurance company, such
encumbrance unknown to the company avoids the policy, although it
is not customary to make that enquiry when policies are issued to large
corporations.

2. FIRE INSURANCE—*Policy—Type in which condition printed—Objection for
first time in Appellate Court—Case at bar.*—An objection that the condi-
tions of an insurance policy are not printed in type as large as long
primer, as required by the statute, cannot be made for the first time in
the Appellate Court. In the case at bar the company was allowed to
rely on the conditions in the policy which rendered it void, and the
record fails to disclose that the conditions were not printed in the type
prescribed by the statute, and hence the presumption is that the policy
conformed to the statutory requirement.

Error to a judgment of the Law and Equity Court of the
city of Richmond, rendered May 4, 1895, in an action of *as-
sumpsit,* wherein the plaintiff in error was the plaintiff, and
the defendant in error was the defendant.

*Affirmed.*

The opinion states the case.

*Leake & Carter,* for the plaintiff in error.

*Staples & Munford,* for the defendant in error.

KEITH, P., delivered the opinion of the court.

The Sulphur Mines Company sued the Phenix Insurance Company in the Law and Equity Court of the city of Richmond upon a policy of insurance claiming the sum of $2,132.53 as damage sustained by it by reason of the destruction by fire of certain property insured in the defendant company. The policy contains the following provision: "This policy is null and void if the property hereby insured, or any part thereof, is mortgaged or otherwise encumbered, either prior or subsequent to date hereof, unless consent to same is endorsed hereon by properly authorized agent of this company."

It appeared in evidence upon the trial that the property insured was encumbered, at the time of the insurance and of the fire, by deed of trust dated February 25, 1885, to Eugene Kelly and Isaac Davenport, Jr., to secure three hundred $1,000 coupon bonds of the plaintiff company.

The plaintiff, over the objection of the defendant, introduced evidence tending to show that its officers and agents had never noticed this provision in the policy until after the loss; that it had policies written in a number of other companies, only one of which objected to paying the loss assessed against it; that the insurance was placed by Mr. Montague, a stockholder and director of the plaintiff company, who states that he had often times insured property for railroads and other large corporations, in insurance companies which he represented, without engrafting the condition against encumbrances in the policy at all, not deeming it necessary to state the amount in volume of the several mortgages usually resting upon such corporations, but he could not state that such was the habit of the defendant company. It appears that Montague & Co. were applied to for insurance upon plaintiff's property for $41,500, $10,000 of which was written in companies represented by him, and the residue distributed among his friends, of whom Moore & Co. represented the defendant company.

Mr. Moore, a witness for the defendant, testified that he

was the agent for the Phenix Ins. Co. of Brooklyn, when the policy sued on was issued; that Montague & Co. were not the agents or sub-agents of the defendant company; that he had no knowledge of the deed of trust when the policy issued; and that his first intimation of it was received when the proofs of loss were made out. As agent of the defendant company he had policies in his possession already signed by the president, which he, the agent, had the right to sign and issue; and he further stated that in case of large corporations it was unusual to ask "whether or not there is a mortgage on the property;" that he had insured the Richmond & Danville R. R. Co. for a very large amount of money, and that there is no statement on its policy with regard to the mortgage clause. He further states that if he had been informed at the time the policy was issued of the existence of a deed of trust on the plaintiff's property it would have made no difference except that the loss, if any, would have been made payable to the trustee; that all the facts would have been communicated to the insurance company, and it would have decided whether or not to issue the policy.

The whole matter of law and fact was submitted to the court without the intervention of a jury, and thereupon a judgment was entered for the defendant, to which a writ of error was awarded by one of the judges of this court.

In May on Ins., vol. 1, sec. 290, it is said: "If no inquiry be made, nothing but good faith is necessary, touching the title or interest;" and in sec. 291 (a): "If the policy is to be void by an incumbrance, without written consent of the company, such incumbrance avoids it, whether known to the assured or not."

In *Hench* v. *Insurance Co.*, 122 Pa. St. at p. 135, it is said: "An assured who covenants against incumbrances must keep his covenant precisely as every other person, and it is his business to see that no incumbrances fall upon his property."

See also *Ins. Co.* v. *Schmidt*, 119 Pa. St., at p. 460; and *Ellis* v. *State Ins. Co.*, 61 Iowa, at p. 577.

In *West Rockingham Mutual Fire Ins. Co.* v. *Sheets & Co.*, 26 Gratt. 854, the Court, speaking upon this subject, says: "If a policy of insurance does not require that the insured shall give in the liens or incumbrances on the property insured, or state what is his title to it, and no questions are asked of the insured by the insurer, the policy is not avoided by the failure of the insured, without any fraudulent intent, to mention a lien upon it." The court is there referring to a policy in which there is no warranty, or representation amounting to a warranty, or condition, or stipulation covering the point under consideration. If the insurer does not require the insured to state the liens, requires no warranty upon the subject, and makes no stipulation or condition in the policy, the failure of the insured without fraudulent intent to mention a lien upon the property will not avoid the policy. In that case there was no concealment, no misrepresentation, no warranty, and no covenant as to incumbrances.

So in *Morotock Ins. Co.* v. *Rodefer Bros.*, 92 Va. at p. 747, the company relied upon the covenant against a chattel mortgage. It appeared in the proof that there was a mortgage upon the realty, but none upon the personalty; no "chattel mortgage" as it is described in the policy. In other words, the covenant was against the existence of a mortgage of one character, and the proof was of the existence of a mortgage of a wholly different character. The policy in that case was properly construed against the company, and it was held liable for the loss.

In the case before us there is a plain covenant that the policy shall be void if the property was mortgaged at or after the date of the policy. It was a covenant which the parties had a right to make, and which, if broken, the courts have no choice but to enforce.

The statute law (Code of Va., sec. 3252) requires that "In

any action against an insurance company or other insurer, founded on a policy of insurance issued after the first day of July, eighteen hundred and seventy-eight, no failure to perform any condition of the policy, nor violation of any restrictive provision thereof, shall be a valid defence to such action, unless it appears that such condition or restrictive provision is printed in type as large or larger than that commonly known as long primer type, or is written with pen and ink in or on the policy.''

It is contended by plaintiff in error that this section precludes the defendant from relying upon the provision avoiding the policy in the event of the property insured being encumbered; it not appearing that this provision of the policy was printed in type of the prescribed character. No such point was made in the trial court.

The object of the statute is a wise and beneficent one to protect applicants for insurance who are often times inexperienced and unacquainted with the provisions and stipulations usual in policies of insurance, by requiring that such conditions and restrictive provisions shall not constitute a defence unless they are printed in the policy in type of a prescribed size. It does not forbid companies to protect themselves by the insertion of conditions, limitations, and restrictions upon their liability, for men usually have the right to contract as they please about their own affairs.

If printed in small type these restrictive provisions might easily escape the observation of the unwary, and it has therefore been wisely ordered that they, and not the policy, shall be nugatory unless printed in type of such a size as would challenge the attention and be easily read by the ordinary applicant for insurance.

We entertain no doubt that, if the defence suggested in argument here could have found any support in the evidence, the court would not have been called upon to indulge in any conjecture, or to resort to any strained construction of the

statute in order to overcome the provision of the policy. If it could have been made to appear, we doubt not it would have been shown that the provision relied on by the defendant was void because not printed as the statute requires.

But however this may be, the point was not relied on in the court below, and cannot be made here for the first time. *Warren* v. *Warren*, 93 Va. 73.

The policy is set out in the record, and, along with the other evidence in the cause, was submitted to the court. With all the evidence before it, the court entered judgment for the defendant. By that judgment the court enforced the provision which rendered the policy void. In so deciding, it must have held that it was a valid provision, which it could not have done if section 3252 applied. It must also have held that the evidence was insufficient to show a waiver of the condition by the defendant, or that it was from any cause inoperative. That judgment is before us for review upon a certificate of the evidence, and is to be considered, under the law, as upon a demurrer to the evidence. Every presumption is in favor of its correctness, and it cannot be disturbed unless error therein to the prejudice of the plaintiff in error be made to appear upon the record.

We have been unable to discover error, and the judgment must be affirmed.

*Affirmed.*